23CA2172 Peo v Trevino 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2172
Weld County District Court No. 23CR156
Honorable Marcelo A. Kopcow, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

George Olivas Trevino,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, George Olivas Trevino, appeals his conviction and sentence for vehicular eluding. We affirm.

## I.     Background

¶ 2      At approximately 11:30 p.m. on January 5, 2023, Officer Jacob Fischer stopped Trevino for a license plate violation. Officer Armando Leyva arrived on scene shortly thereafter. Leyva approached Trevino and asked him to step out of the vehicle, but Trevino refused and drove away. The two officers followed in their respective vehicles. Fischer testified that Trevino's speed eventually increased such that he "was pulling away from [the officers] rapidly" and started "swerving between the left and right lanes." The officers decided to end the pursuit for safety reasons.

¶ 3      Trevino was charged with vehicular eluding, disobeying a police officer, reckless driving, and a license plate violation. Before trial, the court agreed that it would instruct the jury on reckless driving as a lesser included offense of vehicular eluding, rather than as a separate count. At trial, the court granted defense counsel's motion for a judgment of acquittal on the license plate violation charge and dismissed that count. The jury convicted Trevino of

vehicular eluding and disobeying a police officer. He was sentenced to five years in the custody of the Department of Corrections.

¶ 4        On appeal, Trevino raises several challenges to his vehicular eluding conviction. First, he argues that there was insufficient evidence to sustain the conviction. Second, he contends that the trial court erred by overruling his objections to some of Fischer's testimony. Third, he challenges the vehicular eluding jury instruction, contending that the court failed to adequately define an element of the offense. Fourth, he argues that cumulative error warrants reversal. Finally, he challenges his vehicular eluding sentence.

## II.     Sufficiency of the Evidence

### A.     Additional Facts

¶ 5       Fischer was the only witness at trial. However, the prosecution also admitted and played Leyva's body camera footage for the jury. Fischer testified that, at the start of the pursuit, Trevino was driving about five to ten miles per hour over the thirty-five-mile-per-hour speed limit. In the bodycam recording, Levya similarly said that Trevino was driving between thirty and fifty miles per hour.

2

¶ 6     Fischer also testified that Trevino eventually approached an intersection and didn't stop before he turned right at a red light. Fischer estimated that Trevino took the turn at a little under forty-five miles per hour.[1]  Leyva didn't mention this in the recording. After the turn, Fischer testified that Trevino didn't exceed the speed limit for some time but eventually increased his speed such that he was "pulling away from [the officers] rapidly" and "began swerving between the right and left lanes" without signaling.  Fischer testified that Trevino's speed increased to "at least eighty miles per hour" on a road with a speed limit of sixty-five miles per hour.  In the recording, Leyva said Trevino was "gaining speed" and "doing about eighty miles an hour."  At this point, Leyva stated that he was discontinuing his pursuit, and Fischer explained that he and Leyva had stopped their pursuit "due to [Trevino's] increase in speed and the swerving between lanes" and out of concern for the safety of other people and property.

---

[1] However, Fischer acknowledged that his car was behind Leyva's and Trevino's cars, so he didn't always have a clear view of Trevino's car, and his speed estimates were based on Leyva's statements.

¶ 7    On cross-examination, Fischer admitted that he didn't note in his report or his sworn affidavit that Trevino failed to stop before turning right at the red light. Defense counsel also elicited testimony from Fischer that he didn't include the failure to stop in his report because there was no oncoming traffic when Trevino turned at the light.

### B.    Standard of Review and Applicable Law

¶ 8    We review de novo whether there's sufficient evidence to support a jury's verdict. *People v. Market*, 2020 COA 90, ¶ 47. In doing so, "[w]e must determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* We also "give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence." *Id.* Finally, it is the jury's role — not ours — to determine witness credibility, weigh the evidence, and resolve conflicting or inconsistent evidence. *Id.*

¶ 9    Vehicular eluding is defined as follows:

Any person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a reckless manner, commits vehicular eluding.

§ 18-9-116.5(1), C.R.S. 2025.

### C.   Analysis

¶ 10    Trevino contends that the prosecution failed to meet its burden to prove that he drove in a reckless manner. We aren't persuaded.

¶ 11    Taken in the light most favorable to the prosecution, the evidence showed that Trevino failed to stop before turning at a red light and then drove at least eighty miles per hour (fifteen miles per hour over the speed limit) while swerving between lanes without signaling, all late at night. And Fischer testified that the officers discontinued their pursuit because they were concerned that Trevino's conduct put at risk "the safety of everybody . . . on the road, the passenger that was in [Trevino's] car and everyone's property that would have been around that area." From this evidence, the jury could have reasonably concluded that Trevino drove in a reckless manner. *See K.V. v. A.V.*, 2019 ND 255, ¶ 24

5

(evidence was sufficient to support reckless driving conviction when the defendant ran several stop signs, he refused to stop when police signaled him, "and the officer was unable to continue pursuing the vehicle due to safety concerns").

¶ 12     We reject Trevino's contention that the lack of oncoming traffic at the light and lack of other cars on the road support the conclusion that the prosecution failed to prove he drove in a reckless manner. *See People v. Rhodus*, 2012 COA 127, ¶ 33 (rejecting a sufficiency challenge to a vehicular eluding conviction because, "even if the probability of harm to other people was low because no one happened to be in the vicinity, the magnitude of the potential harm was undeniably great"). To be sure, the jury could consider these mitigating facts, among all the attendant circumstances, in assessing whether Trevino drove in a reckless manner, but these facts — even if undisputed — don't render the totality of the evidence insufficient to sustain a conviction. Moreover, although Fischer's report and Leyva's statements in the bodycam footage didn't corroborate every aspect of Fischer's testimony — including his testimony about Trevino running the red light — we must view the evidence in a light most favorable to the

prosecution, and we cannot second-guess the jury's credibility determinations. *See Market*, ¶ 47.

¶ 13     Finally, Trevino contends that his conduct, in isolation, constituted only minor traffic offenses that don't support the conclusion that he drove recklessly. But this doesn't mean that a jury couldn't conclude from Trevino's conduct *as a whole* that he drove in a reckless manner. *See People v. Paarlberg*, 612 N.E.2d 106, 110 (Ill. App. Ct. 1993) (explaining that reckless driving can be proven by "multiple traffic offenses which together demonstrate the driver's willful and wanton disregard"); *see also People v. Poindexter*, 2013 COA 93, ¶¶ 40-41 (concluding the evidence was sufficient when the defendant's speed was five to fifteen miles over the speed limit, and the defendant engaged in other reckless driving behaviors).

¶ 14     We emphasize that evidence need not be overwhelming to be sufficient. And "we 'may not serve as a thirteenth juror' by considering whether we 'might have reached a different conclusion than the jury.'" *Thomas v. People*, 2021 CO 84, ¶ 10 (citation omitted). For the reasons above, we conclude that the evidence, as a whole and viewed in a light most favorable to the prosecution, was

sufficient to support Trevino's conviction for vehicular eluding. *See Market*, ¶ 47.

## III. Fischer's Testimony

¶ 15 Next, Trevino challenges testimony that the prosecutor elicited from Fischer on redirect examination about whether Trevino's conduct satisfied elements of vehicular eluding. We conclude that, although the trial court erroneously admitted this testimony, the error was harmless.

### A. Additional Facts

¶ 16 On cross-examination, defense counsel sought to impeach Fischer by highlighting several facts that he testified to but didn't include in his report or sworn affidavit. For example, Fischer admitted that the affidavit and report didn't mention Trevino failing to stop at a red light or failing to use his turn signal when changing lanes. Defense counsel then elicited several responses that suggested Fischer omitted this information because he thought it had marginal significance. The remaining cross-examination largely involved defense counsel's attempts to impeach the accuracy of Fischer's recollection and elicit other inconsistencies between his report and his testimony.

¶ 17    On redirect, the prosecutor asked Fisher if he listed eluding as a charge in his affidavit, which he filled out around the same time that he wrote his report.  Fischer said that he had.  The prosecutor then asked, "And the definition of eluding, which [the court] will give later, includes [that] the [d]efendant knew or reasonably should have known that he was being pursued by a peace officer and operated his vehicle in a reckless manner?"  Defense counsel objected, but before counsel could explain the basis for the objection, the court asked if the objection was to leading.  Defense counsel agreed the question was leading, but said, "[I]t's also in the purview of the jury."  The court sustained the objection on leading grounds.  The prosecutor rephrased, "Can you tell me what eluding is?"  Fischer responded, "[E]luding is when somebody who is being stopped by the police . . . does not stop and continues to drive without stopping."  The court interjected and explained that it would give the jury "the written legal definition of eluding."

¶ 18    The prosector next asked if "the failure to use a turn signal and stopping at a red light qualif[ied] as reckless," and defense counsel raised a "purview of the jury" objection again.  The court overruled the objection, concluding that the defense opened the

9

door "as to why [Fischer] didn't include [the red light or turn signal] language but included vehicular eluding."  The prosecutor rephrased, "[D]oes the lack of turn signal and running the red light qualify, is that a part of what you encompassed in your eluding?"  Fischer responded affirmatively.

¶ 19    Finally, during closing argument, the prosecutor said, "Why wasn't it included in the report and arrest affidavit . . . ?  Because, as the officer testified, all of those things, the running the red light, the swerving, the reckless disregard [are] encompassed in that charge."  Defense counsel didn't object.

## B.    Standard of Review and Applicable Law

¶ 20    We review preserved evidentiary challenges for an abuse of discretion.  *People v. Owens*, 2024 CO 10, ¶ 105.  "[A] trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or based on an incorrect understanding of the law."  *Id.*  If the court erred, we review for harmless error and reverse only "if the error 'substantially influenced the verdict or affected the fairness of the trial proceedings.'"  *Hagos v. People*, 2012 CO 63, ¶ 12 (citation omitted).

10

¶ 21    Under CRE 704, otherwise admissible testimony isn't rendered inadmissible "because it embraces an ultimate issue to be decided by the trier of fact."  However, "[w]hile Rule 704 does not prohibit a lay witness from testifying to an issue of ultimate fact, obviously, it does not mean a witness may testify that a particular legal standard has or has not been met." *People v. Collins*, 730 P.2d 293, 306 (Colo. 1986).  Nor may a witness "express[] an opinion on the applicable law or legal standards," *People v. Grant*, 174 P.3d 798, 808 (Colo. App. 2007), or define the law for the jury, *People v. Prendergast*, 87 P.3d 175, 182 (Colo. App. 2003).  *See United States v. Messner*, 107 F.3d 1448, 1454 (10th Cir. 1997) ("In no instance can a witness be permitted to define the law of the case." (citation omitted)).

## C.    Analysis

¶ 22    First, we reject the People's contention that we shouldn't consider Trevino's evidentiary challenge because he doesn't explicitly challenge the court's conclusion that defense counsel opened the door to Fischer's testimony.  By asserting that the testimony was within the jury's purview, Trevino preserved an argument that it was inadmissible under CRE 704, and he raises

11

that same argument in his appellate briefing. *See People v. Coughlin*, 304 P.3d 575, 582 (Colo. App. 2011) (a party need not identify the specific rule of evidence if they alert the court to the error); *People v. Springsted*, 2016 COA 188, ¶ 10 (to preserve an issue for appeal, a party must give the court "an adequate opportunity to make findings of fact and conclusions of law").

¶ 23    Next, we reject the People's contention that the court correctly held that defense counsel opened the door to the challenged testimony. *See People v. Heredia-Cobos*, 2017 COA 130, ¶ 20 ("A party may open the door to otherwise inadmissible evidence by presenting incomplete evidence on a subject."). Although the defense sought to impeach Fisher by emphasizing inconsistencies between his testimony and his earlier statements, counsel never mentioned recklessness or eluding, nor did he suggest that Fischer didn't include those terms in his report or affidavit. The tenor of defense counsel's cross-examination appeared to be general impeachment seeking to cast doubt on Fischer's recollection. This didn't open the door to the officer's opinion about whether Trevino's conduct fit the legal definition of recklessness or eluding.

¶ 24     Additionally, we agree with Trevino that Fischer's testimony was inadmissible under CRE 704.[2]  Defense counsel's question asking whether Trevino's conduct qualified as reckless or eluding improperly elicited Fischer's opinion about whether a legal standard had been met.  *See Collins*, 730 P.2d at 306.  And Fischer improperly defined the law when he defined eluding.  *See Prendergast*, 87 P.3d at 182.  Therefore, the trial court erred by overruling Trevino's objections.

¶ 25     However, for several reasons, we conclude that the error was harmless.  First, after Fischer defined eluding, the court immediately informed the jury that it would receive an instruction with the legal definition.  This significantly mitigated any potential prejudice.  *See People v. Ellis*, 30 P.3d 774, 778 (Colo. App. 2001) ("[W]e presume that the jury followed the curative instruction and that the instruction cured any prejudice . . . .").  The court also instructed the jury that it was the court's role to give instructions

---

[2] Trevino also raises an unpreserved challenge to Fischer's testimony under CRE 701, arguing that it was improper lay opinion. We don't address this argument because we conclude that the evidence was inadmissible under CRE 704, and the harmless error analysis is the same regardless of whether the testimony was improper under one or both rules of evidence.

on the law and the jury's duty to follow those instructions.  *See People v. Dominguez-Castor*, 2020 COA 1, ¶ 91 ("[W]e presume that the jury followed [the court's] instruction[s].").

¶ 26   Next, Fischer didn't answer the question about whether Trevino's conduct was reckless, and the prosecutor's rephrased question was ambiguous.  The prosecutor asked whether Trevino's conduct qualified as or was "part of what [Fischer] encompassed in [his] eluding" determination.  Fischer's affirmative response could be interpreted as a factual statement about what conduct led Fischer to charge Trevino with eluding, rather than a statement about whether Trevino's conduct satisfied the legal elements of eluding.  *See People v. Vigil*, 718 P.2d 496, 505 (Colo. 1986) (improper testimony that was "fleeting and ambiguous" was minimally prejudicial).  And although the prosecutor referenced the improper testimony in closing, the testimony itself and the prosecutor's statement were isolated and brief.  *See Dominguez-Castor*, ¶ 80 (explaining that isolated impropriety is often harmless).

¶ 27   Finally, although not overwhelming, there was other evidence of Trevino's guilt.  First, it is uncontested that he drove away from the officers and refused to stop when they pursued him.  Next, as

14

discussed above, the jury heard evidence that he was driving at least eighty miles per hour late at night with multiple officers pursuing him, he was swerving between lanes without signaling, and he failed to stop before turning at a red light. The jury also heard that the officers ended their pursuit due to safety concerns. Therefore, there was ample admissible evidence for the jury to rely on to find Trevino guilty of vehicular eluding. Accordingly, Fischer's improper testimony didn't substantially influence the jury's verdict and was therefore harmless. *See Hagos*, ¶ 12.

## IV. Challenged Jury Instruction

¶ 28 Next, Trevino argues that the trial court erred by failing to specify which definition of recklessness — the definition from the reckless driving statute or the definition applicable to all crimes with a recklessness mental state — applied to the reckless manner element of vehicular eluding. We disagree.

### A. Additional Facts

¶ 29 The jury received elemental instructions for vehicular eluding and reckless driving. The vehicular eluding instruction included as an element that Trevino "operated his vehicle in a reckless manner." That instruction didn't define "reckless manner." However, the jury

15

received a general instruction about recklessness: "A person acts 'recklessly' when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

¶ 30     The elemental reckless driving instruction informed the jury that "Vehicular Eluding as charged in . . . this case necessarily include[d] the lesser offense of Reckless Driving" and that the elements of reckless driving were that "Mr. Trevino . . . drove a motor vehicle . . . in such a manner as to indicate either a wanton or willful disregard for the safety of persons or property."

¶ 31     Before trial, Trevino tendered the following jury instruction:

> A person acts "recklessly" when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.  Vehicular eluding and reckless driving require proof beyond a reasonable doubt that Mr. Trevino acted with a wanton or a willful disregard for the safety of persons or property.

The court rejected the tendered instruction because it deviated from the "approved definition of recklessly" and because the reckless driving language in the proposed instruction was already contained in the reckless driving instruction.

16

## B. Standard of Review and Applicable Law

¶ 32 We first reject the People's assertion that Trevino didn't preserve his argument that the court should have clarified which recklessness definition applied to the reckless manner element of vehicular eluding. Trevino's tendered instruction stated that the jury had to find that he acted with "a willful and wanton disregard for the safety of persons or property" to be guilty of vehicular eluding. *See* § 42-4-1401(1), C.R.S. 2025 (a person commits reckless driving when they "drive[] a motor vehicle . . . in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property"). Thus, the tendered instruction clarified which definition applied to vehicular eluding by applying both the general recklessness definition and the reckless driving statute's definition to the vehicular eluding count. *See People v. Tardif*, 2017 COA 136, ¶ 10 (explaining that instructional challenges are preserved "if the defendant tenders the desired relevant instruction"). And, contrary to the People's suggestion, Trevino did argue that failing to adequately define reckless manner could confuse the jury.

17

¶ 33    We review de novo whether jury instructions accurately state the law.  *Garcia v. People*, 2022 CO 6, ¶ 16.  We consider not only whether the instructions are legally accurate "but also whether [they] are confusing or may mislead the jury."  *Id.*  In doing so, we consider the applicable criminal statutes.  *Id.*  If the jury instructions correctly state the law, "we review a trial court's decision to give those instructions for an abuse of discretion."  *Id.* at ¶ 18.  It's also within the trial court's discretion to determine whether to give additional instructions that properly state the law.  *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011).

¶ 34    Reckless driving is a lesser included offense of vehicular eluding.  *Id.* at 479.  And "the element of recklessness is the same in each offense, despite the applicable statutes[] being worded differently."  *Id.* at 478-79.  Thus, although vehicular eluding requires a person to drive "in a reckless manner," § 18-9-116.5(1), while reckless driving requires a person to drive with "a wanton or a willful disregard for the safety of persons or property," § 42-4-1401(1), both statutes require the same conduct — recklessness.  "A person acts recklessly when he consciously disregards a

substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18-1-501(8), C.R.S. 2025.

## C. Analysis

¶ 35 Trevino contends, as he did below, that the jury should have received an instruction explaining whether to assess vehicular eluding's reckless manner element using either (1) the "consciously disregards a substantial and unjustifiable risk" definition from section 18-1-501(8) or (2) the "wanton or . . . willful disregard for the safety of persons or property" definition from section 42-4-1401(1). It's unclear, however, if he's arguing that the court should have instructed the jury to apply (1) both definitions (as his proffered instruction suggested); (2) only the reckless driving statute's definition; or (3) either definition, so long as the court tied the definition to the vehicular eluding count. For example, he asserts that we must resolve which definition applies, but he doesn't explicitly suggest an answer to that question. And although he contends that the trial court erred by failing to instruct the jury on which definition to apply, he doesn't argue that the court should have applied one definition over the other.

¶ 36    We conclude that the court didn't abuse its discretion by simply giving the standard definition of recklessness without explicitly instructing the jury on how to assess the reckless manner element.  In doing so, we reject any argument that the court erred by failing to give an instruction applying the reckless driving statute's language to the vehicular eluding count.

¶ 37    First, the trial court's instruction mirrored the vehicular eluding statute and the model instruction.  *See* § 18-9-116.5(1); COLJI-Crim. 9-1:54 (2025).  Similarly, the instruction defining recklessness was identical to the statutory definition and the model instruction.  *See* § 18-1-501(8); COLJI-Crim. F:308 (2025). Therefore, we conclude that the instructions were legally accurate. *See Garcia,* ¶ 16*; see also People v. Claycomb,* 2025 COA 36, ¶ 26 ("Generally, instructions that accurately track the language of applicable statutes and pattern instructions are sufficient.").  And Trevino doesn't cite any authority requiring an explicit instruction on how to assess the reckless manner element for the crime of vehicular eluding.

¶ 38    Second, Trevino doesn't cite any authority requiring courts to use the reckless driving statute's language in vehicular eluding

instructions. Indeed, a division of this court rejected a nearly identical argument in which the defendant argued that the trial court should have used the reckless driving statute's definition of recklessness to define the reckless manner element of vehicular homicide. *See People v. Scarlett*, 985 P.2d 36, 42-43 (Colo. App. 1998). The division reasoned that section 18-1-501 applies to offenses in the Colorado Criminal Code (title 18), so "the definition of 'recklessly' in [section] 18–1–501(8) is plainly intended to be used in interpreting other statutory sections contained within the Criminal Code." *Id.* at 43. Unlike reckless driving, vehicular eluding is a title 18 offense. *See* § 18-9-116.5.

¶ 39    Third, our cases have consistently applied the general recklessness definition to vehicular eluding. For example, a division of this court explained that vehicular eluding requires proof that the defendant "recklessly operated a motor vehicle" and quoted section 18-1-501(8)'s recklessness definition. *Poindexter*, ¶¶ 38-39; *see also Rhodus*, ¶¶ 30-31 (using the section 18-1-501(8) definition to consider whether there was sufficient evidence of the reckless manner element); *People v. Sherwood*, 5 P.3d 956, 959 (Colo. App. 2000) ("[T]he statute merely requires proof that defendant both

21

eluded or attempted to elude a police officer, and that he operated his car recklessly.").

¶ 40    But Trevino seems to argue that — even if legally accurate — the vehicular eluding instruction could have confused the jury because the reckless driving instruction had its own definition of recklessness (willful and wanton disregard) that differed from 18-1-501(8)'s definition (consciously disregarding a substantial and unjustifiable risk). However, because Trevino doesn't explain how the two standards are materially different, we can't discern why it would matter which definition the jury applied. *See Esparza-Treto*, 282 P.3d at 478-79; *Commonwealth v. Bullick*, 2003 PA Super 285, ¶ 14 ("[W]illful or wanton disregard" is the same standard as "'*conscious disregard*' of a *substantial* and *unjustifiable* risk." (citations omitted)). And, as Trevino points out, the jury shouldn't have reached the reckless driving instruction because it found him guilty of vehicular eluding. This reduces any risk that the reckless

22

driving instruction confused the jury.[3]  Moreover, Trevino doesn't explain, and we can't discern, how applying one definition instead of the other could have affected the jury's verdict.

¶ 41     Finally, a division of this court rejected a similar challenge in which the defendant asked the trial court to give an instruction defining an element of careless driving.  *See Claycomb*, ¶¶ 17-33.  A person commits careless driving when they drive "in a careless and imprudent manner, without due regard for" certain conditions. § 42-4-1402(1), C.R.S. 2025.  The division rejected the defendant's argument that the trial court erred by refusing to give his tendered instruction defining "due regard."  *Claycomb*, ¶¶ 18-19, 21, 28.  It reasoned that "although 'reckless' was the only culpable mental state defined in the jury instructions, the provided careless driving instruction tracked the statutory language and the model criminal jury instruction."  *Id.* at ¶ 29.  And it emphasized that there was no

---

[3] Trevino argues that the instructions weren't duplicative — as the trial court found — because the jury would reach the reckless driving instruction only if it found Trevino not guilty of vehicular eluding.  But this undermines his argument that the reckless driving instruction confused the jury.

23

binding authority "requir[ing] a separate instruction for the culpable mental state of careless driving." *Id.*

¶ 42    This reasoning is persuasive. The vehicular eluding instruction tracked both the statute and the model instruction. Additionally, no binding precedent requires courts to define "reckless manner." And unlike in *Claycomb*, the jury was instructed on the definition of recklessness and could apply that definition to the reckless manner element. Thus, the trial court didn't err by declining to give Trevino's tendered instruction.

## V.    Cumulative Error

¶ 43    Finally, we reject Trevino's contention that cumulative error warrants reversal.

¶ 44    To reverse based on cumulative error, "a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not. Stated simply, cumulative error involves cumulative prejudice." *Howard-Walker v. People*, 2019 CO 69, ¶ 25 (citation omitted).

¶ 45    We agreed with Trevino that the court erred by overruling two objections to Fischer's testimony. First, Fischer improperly defined vehicular eluding. Second, he responded affirmatively to the

24

following improper question: "[D]oes the lack of turn signal and running the red light qualify, is that a part of what you encompassed in your eluding?" We conclude that this doesn't amount to cumulative error. The errors occurred at effectively the same time, the improper testimony was brief, the jury was properly instructed, and there was other evidence of Trevino's guilt. Therefore, we can't say that cumulative error requires reversal.

## VI. Vehicular Eluding Sentence

¶ 46 Finally, we address and reject Fischer's challenge to his vehicular eluding sentence.

### A. Standard of Review and Applicable Law

¶ 47 "We review de novo constitutional challenges to the trial court's sentencing determination[]." *People v. Kirby*, 2024 COA 20, ¶ 55. Because Trevino didn't preserve this issue, we will affirm his sentence unless the trial court plainly erred by imposing a sentence above the maximum presumptive range. *See id.*

¶ 48 A trial court may impose a sentence that exceeds the presumptive statutory range if it finds that extraordinary aggravating circumstances warrant an aggravated sentence. *Id.* at ¶ 53; § 18-1.3-401(6)-(7), C.R.S. 2025. However, except for the fact

25

that a defendant was previously convicted of a crime, "any fact that increases a defendant's sentence beyond the maximum presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *Kirby,* ¶ 53 (first citing *Apprendi v. New Jersey,* 530 U.S. 466, 490; and then citing *Blakely v. Washington,* 542 U.S. 296, 301 (2004)).  In Colorado, there are four types of facts that a trial court may use to aggravate a sentence: "(1) facts found by a jury beyond a reasonable doubt; (2) facts admitted by the defendant; (3) facts found by a judge after the defendant stipulated to judicial factfinding; and (4) facts regarding the defendant's prior convictions." *Id.* at ¶ 54.

¶ 49      "[T]he existence of a prior conviction opens the aggravated sentencing range," and a sentencing court may choose to impose an aggravated sentence based on a defendant's prior convictions. *DeHerrera v. People,* 122 P.3d 992, 994 (Colo. 2005); *see also* § 18-1.3-401(8)(c) (allowing courts to consider additional aggravating circumstances not listed in subsection 18-1.3-401(8)(a) when deciding whether to impose an aggravated sentence).  If a sentencing court relied on prior convictions to aggravate a sentence, it doesn't matter if the court also considered other factors outside

the four permissible types of facts courts may use to aggravate

sentences. *People v. Elie*, 148 P.3d 359, 367 (Colo. App. 2006).

### B.     Analysis

¶ 50     The presumptive sentencing range for vehicular eluding, a

class 5 felony, is one to three years.  § 18-1.3-401(1)(a)(V.5)(A);

§ 18-9-116.5(2)(a).  Trevino argues that the trial court erroneously

aggravated his sentence based on the fact that, at the time of the

offense, he was on parole.  He argues that a jury had to find beyond

a reasonable doubt that he was on parole before the court could use

that fact to aggravate his sentence.  But even assuming, without

deciding, that the court obviously erred by considering Trevino's

parole status in the absence of a jury finding, we conclude that the

court didn't plainly err by aggravating his sentence because the

aggravation was, at least in part, based on his prior convictions.

*See Elie*, 148 P.3d at 367.

¶ 51     The court opened its sentencing determination with a

discussion of Trevino's extensive criminal history.  It then listed

twelve of his prior convictions.  It also noted that Trevino was on

parole for an earlier vehicular eluding conviction.  The court

explained that it was imposing a five-year sentence because the new

vehicular eluding conviction was "[Trevino's] eleventh felony conviction *and* because [he was] on parole for the identical crime that [he] w[as] convicted of." (Emphasis added.)

¶ 52 The court made clear that its sentencing decision was based largely on Trevino's extensive criminal history and numerous prior convictions. *See DeHerrera,* 122 P.3d at 994; *Elie,* 148 P.3d at 367. The court could consider those convictions without a jury finding, *see Kirby,* ¶ 53, and prior convictions are a proper basis for aggravating a sentence, *Elie,* 148 P.3d at 367. Therefore, it doesn't matter that the court *also* considered Trevino's parole status. *See Elie,* 148 P.3d at 367.

¶ 53 We reject as misplaced Trevino's reliance on *Elie,* in which a division of this court concluded that the trial court improperly used its own findings to aggravate a sentence. *See id.* at 366-67. There, the trial court merely mentioned the defendant's prior convictions and aggravated the sentence for one felony menacing conviction but not the other. *Id.* at 366. The division reasoned that the trial court would have aggravated both sentences if it were truly relying on the prior convictions. *Id.* Here, by contrast, the court emphasized

Trevino's prior convictions and made clear that it was relying on them to aggravate his sentence.

## VII. Disposition

¶ 54 We affirm Trevino's judgment of conviction and sentence for vehicular eluding.

JUDGE WELLING and JUDGE SCHOCK concur.